**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin L. Moreno, | No. CV19-5792 PHX DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Robin L. Moreno seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. The Court will affirm the decision.

**I.  Background**.

Plaintiff is a 55-year-old woman who worked as a computer programmer for 25 years. A.R. 36. Plaintiff applied for disability benefits on February 1, 2016, alleging disability beginning April 15, 2013. A.R. 14. Plaintiff later amended her alleged disability onset date to December 29, 2014. *Id*. Plaintiff alleges that she suffered from various back and neck impairments following a motor vehicle accident in 2011. Doc. 12 at 8, A.R. 36-37. She underwent several surgeries to address these impairments, but claims the surgeries were unsuccessful, leaving her in constant pain and unable to work. Doc. 12 at 8, *see also* A.R. 37-38.

On June 11, 2018, Plaintiff and a vocational expert ("VE") appeared and testified at a hearing before the ALJ. A.R. 30-52. On November 6, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 15. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 24, 2019. A.R. 1-3.

## II.   Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the whole record. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). "[I]n interpreting the evidence and developing the record," however, "the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ must consider only significant and probative evidence. *See id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.    The ALJ's Sequential Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404 ("Listings"). § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity from her alleged onset date of December 29, 2014 through September 30, 2018, when she last met the insured status requirements of the Social Security Act. A.R. 16. At step two, the ALJ found that Plaintiff had the following severe impairments: status post multiple cervical and lumbar fusions, carpal tunnel syndrome, headaches, and a left shoulder rotator cuff tear. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. A.R. 18. At step four, the ALJ determined that Plaintiff had the RFC to perform light work and that:

>she can stand/walk for 4 hours and sit for about 6 hours in an 8-hour workday. She can frequently push/pull with her left upper extremity. She can occasionally reach overhead bilaterally. She can frequently handle and finger bilaterally. She can never crawl or climb ladder, ropes or scaffolds. She can occasionally balance, stoop, crouch, kneel or climb ramps and stairs. She can have occasional exposure to loud excessive noise, vibration, unprotected heights and dangerous machinery.

A.R. 18. The ALJ concluded that Plaintiff could perform her past relevant work as a computer programmer, and that she was not disabled within the meaning of the Social Security Act from December 29, 2014 through September 30, 2018, the last date insured. A.R. 23.

## IV.  Discussion.

Plaintiff argues that the ALJ's decision is defective for three reasons: (1) the ALJ's Step 3 determination was improper and not supported by substantial evidence; (2) the ALJ erred by failing to articulate specific and legitimate reasons for discrediting the opinion of Plaintiff's treating physician, Dr. Lawrence Kutz; and (3) the ALJ erred by failing to articulate specific and legitimate reasons for discrediting the opinion of Plaintiff's examining physician, Dr. Anne Koss-Leland. Doc. 12 at 2.[1]

### A.  Step 3 Determination.

#### 1.  Legal Standard.

"If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). The claimant has the burden of proof at step three. Thus, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005) (citation

---

[1] Citations are to page numbers placed at the top of each page by the Court's electronic filing system, not to original page numbers on the documents.

omitted). But if the claimant presents a theory about how her impairments meet or equal a Listing, the ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Id.* at 512.

### 2. ALJ's Step Three Conclusion.

The ALJ's step three conclusion states the following:

> The record does not support the existence of any functional limitations and or diagnostic test results that would suggest that the severity of the impairments meet[s] or equal[s] the criteria of any specific Listing. In addition, no treating or examining physician has reported findings that either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record. In particular, the undersigned notes that the record does not document the abnormalities or limitations required to meet the requirements of Section 1.00 for musculoskeletal disorders.

Plaintiff claims that this is precisely the type of "boilerplate" language insufficient to support a conclusion that Plaintiff's impairment does not meet or equal a Listing under step three. Doc. 12 at 12 (citing *Lewis*, 236 F.3d at 512). The Commissioner asserts that Plaintiff waived this argument because she never raised it before either the ALJ or Appeals Council. Doc. 15 at 10. The Commissioner also argues that the ALJ was not required to discuss any Listing because Plaintiff never argued to the ALJ that she should be found disabled because her conditions met or medically equaled a Listing. *Id.* at 9; *Burch*, 400 F.3d at 683.

The transcript of the June 2018 hearing before the ALJ, as well as Plaintiff's counsel's December 2018 brief to the Appeals Council, show that Plaintiff never presented a Listing argument to the ALJ or Appeals Council. *See* A.R. 30-52, 298-301. Plaintiff's failure to mention – let alone advance any theory – before the ALJ or Appeals Council about why her impairments met or equaled a Listing means that the ALJ was not required to discuss the issue in her report. The Ninth Circuit has made this clear on more than one occasion:

5

> Ford argues that the ALJ erred by failing to consider whether a combination of her impairments medically equalled the criteria of Listings 1.02 or 1.03. This argument also fails, because an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence . . . Because the ALJ did not have an obligation to discuss medical equivalency sua sponte, the ALJ did not err in failing to do so.

*Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (quotation marks, ellipses, and citations omitted); *see also Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence."); *Lewis,* 236 F.3d at 514 (affirming unfavorable step 3 determination even though ALJ did not discuss the claimant's impairments or compare them to any Listing, where the claimant offered "no theory, plausible or otherwise," and pointed to no evidence that he met or equaled a Listing).

As discussed above, Plaintiff has the burden of proving a disability at step three. *Burch*, 400 F.3d at 683. Even if the ALJ's step three Listing decision was "boilerplate" and did not contain an "adequate statement of the foundations on which the ultimate factual conclusions are based" – an issue the Court need not address – this was not error where Plaintiff's counsel failed to raise the Listing argument before the ALJ or Appeals Council.[2]

---

[2] The Commissioner frames this as a waiver, but the Court cannot conclude that waiver applies here. *See Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("[c]laimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."); *see also Edlund v. Massanari*, 253 F.3d 1152, 1160 n.9 (9th Cir. 2001) (citing *Sims* to reject argument that plaintiff waived argument that he met a listing by failing to raise it with the Appeals Council); *Bryant v. Berryhill*, No. 18-CV-01514-DMR, 2019 WL 4168911, at *14 n.5 (N.D. Cal. Sept. 3, 2019) (assertion that claimant waived step three argument that she met or equaled listings for failure to raise it before the ALJ or Appeals Council is "without merit" since claimant's "failure to raise the issue before the Appeals Council does not prevent her from asking this court to consider it.").

**B.     Medical Opinion Evidence.**

**1.     Legal Standard.**

A physician's opinion may be a treating source, examining source, or non-examining source. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 2017)[3]; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one who provides or has provided the claimant with medical treatment or evaluation, or who has an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2)

Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Where the treating doctor's opinion is contradicted by another doctor, the ALJ "may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

"The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by

---

[3] Plaintiff filed her claim in February 2016. *See* A.R. 32. The ALJ's final decision was issued on November 6, 2018, after the Social Security Administration published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence," which provided that certain regulations apply only to application or claims filed before March 27, 2017. A.R. 15, 20 C.F.R. §§ 404.1527, 416.927.

7

a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Dr. Lawrence Kutz.

Dr. Lawrence Kutz, a pain management physician at CORE Institute in Phoenix, has treated Plaintiff in his clinic since 2013. A.R. 808. The ALJ gave Dr. Kutz's opinion little weight. A.R. 22.

On April 6, 2016[4], Dr. Kutz conducted a physical RFC assessment of Plaintiff and completed a questionnaire which indicated that Plaintiff could walk only one city block without rest or severe pain; sit for 30 minutes and stand for 10-15 minutes at a time; sit, stand, or walk for about two hours during an eight-hour work day; use her right hand and arm only 30 percent of the time; rarely look up or down or turn her head right to left; and rarely lift or carry more than ten pounds (and never carry more than twenty pounds) in a competitive work situation. A.R. 306-09. She would also need to shift position at will and take unscheduled breaks of 20-30 minutes every 2-3 hours, and would miss more than four days of work per month. *Id.* Dr. Kutz opined that Plaintiff was incapable of even "low stress" jobs. A.R. 307.

On May 9, 2018, Dr. Kutz also provided a medical statement to the ALJ stating that Plaintiff was unable to work because of chronic cervical and lumbar pain; uncontrolled migraines; thoracic outlet syndrome; carpal tunnel syndrome; left shoulder rotator cuff pathology; and her current regimen of pain management medication. A.R. 808. Dr. Kutz attached to his statement several medical reports from Plaintiff's various providers at the Mayo Clinic, Core Institute, and St. Joseph's Hospital. *Id.* These included MRI and EMG reports, as well as physical therapy, ER, and outpatient procedure notes. A.R. at 808-09.

The ALJ gave Dr. Kutz's medical opinions little weight because they were unsupported by the largely normal clinical record. A.R. 22. Specifically, the ALJ stated:

---

[4] Dr. Kutz dated his assessment as April 6, 2015, *see* A.R. 771, but the Commissioner claims, and Plaintiff does not contest, that this was an error and the actual day of the assessment was April 6, 2016. Both parties describe the assessment as occurring in 2016. *See* Docs. 12 at 7, 15 at 4 n.4.

8

> The undersigned finds these opinions unsupported by the doctor's own clinical findings, which are largely normal (Ex. 4F). For example, his examinations show 5/5 strength in the upper and lower extremities, normal range of motion in the neck and lower back, negative straight leg raise tests, and the claimant indicated that walking does not cause her pain, which conflicts with the doctor's opinion (Ex. 4F/21 & 14F/4, 8). Further, the doctor provides no explanation for the limitations given which further lessens the persuasiveness of the opinion. Thus, little weight is given to Dr. Kutz['s] opinion.

Various portions of Dr. Kutz's medical opinions were contradicted by other physicians. His opinion that Plaintiff was incapable of any work was contradicted by examining physician Dr. Anne Koss-Leland, who found that Plaintiff, while severely restricted on her left side, could perform sedentary work, including standing and/or walking for at least 2-4 hours and sitting for 6-8 hours in an 8-hour workday. A.R. 825-26. Dr. Kutz's opinion was also contradicted by state agency physicians Dr. Krishna Mallik and Dr. Harmon Michelson, who both found that Plaintiff could perform a range of light work, including carrying 20 pounds occasionally and 10 pounds frequently, and sitting, standing, and walking for more than 6 hours in an 8-hour day. A.R. 63-65, 75. Because Dr. Kutz's treating opinion was contradicted by other doctors, the ALJ was required to provide "specific and legitimate reasons" for rejecting it, supported by substantial evidence.[5] *Lester*, 81 F.3d at 830.

Plaintiff claims that the ALJ failed to do this, and instead cherry-picked three pages of medical records indicating Plaintiff was functioning normally while disregarding records indicating otherwise. Doc. 12 at 16. For instance, Plaintiff contends that the ALJ overlooked medical notes indicating that Plaintiff was suffering neck, right arm, lower back, and thoracic pain despite sacroiliac joint injections, and that Dr. Kutz's treatment notes observed a limited range of motion and tenderness to palpation along with diminished sensation in Plaintiff's left upper and lower extremities. *Id.* Plaintiff argues that the ALJ

---

[5] Neither party contests that the "specific and legitimate" standard applies. *See*, *e.g.*, Docs 12 at 2; 15 at 2, 12.

9

failed to evaluate Dr. Kutz's May 2018 medical statement opining that Plaintiff is incapable of any work, to which Dr. Kutz attached treatment notes purportedly supporting his opinion. *Id.*

The Commissioner counters that the ALJ need not accept the opinions of any physician, including a treating physician, if those opinions are conclusory, brief, and inadequately supported by the clinical record. Doc. 15 at 14 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). The Commissioner argues the ALJ "gave good reasons" for discounting Dr. Kutz's opinions, among them that the objective medical record – including Dr. Kutz's own physical examinations and treatment notes – reveal largely normal findings with respect to Plaintiff's mobility and functioning. *Id.* In light of these records, the Commissioner contends that the ALJ's decision to discount Dr. Kutz's opinion was justified and supported by substantial evidence. *Id.* at 15.

The Commissioner also argues that the ALJ had no obligation to consider Dr. Kutz's May 2018 medical statement because the statement was not a proper "medical opinion" under the applicable Social Security Administration regulations. Doc. 15 at 16. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of . . . impairments, including . . . symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2)). Because Dr. Kutz's May 2018 medical statement does not contain a statement of what Plaintiff *could do* despite her limitations, the Commissioner contends it does not properly qualify as a medical opinion, and that the ALJ reasonably found that it had no probative value. *Id.* at 16. The Commissioner also contends that Dr. Kutz's medical statement, which opined that Plaintiff was "unable to work," was in effect a disability opinion, not a medical opinion, and thus is not entitled to deference. Doc. 15 at 16; 20 C.F.R. § 404.1527(d)(1) (disability opinion not entitled to deference); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

As a threshold matter, the Court disagrees with the Commissioner that a physician must include in his statement each and every "judgment[ ] about the nature and severity of

. . . impairments" described in Section 404.1527(a)(2) in order for the physician's statement to qualify as a medical opinion. The Commissioner does not cite any support for this proposition. The Court has found a few instances in which district courts have held that "a treatment note that does not state a medical opinion is not subject to the same scrutiny applied to a medical opinion." *Glendenning v. Saul*, No. CV 18-41-BLG-TJC, 2019 WL 4635598, at *9 (D. Mont. Sept. 24, 2019) (citing *Modesitt v. Astrue*, No. EDCV 09-0483-JEM, 2010 WL 3749290, at *8 (C.D. Cal. Sept. 21, 2010)). But in his May 2018 medical statement, Dr. Kutz opined that Plaintiff was unable to work, provided six distinct reasons for why he believed this to be the case, and attached numerous medical records in support. A.R. 808-09. And other language in Section 404.1527 emphasizes that the Social Security Administration will "always consider the medical opinions" in a claimant's case and "evaluate every medical opinion" received. *See* 20 C.F.R. 404.1527(b)-(c). In light of this inclusive language, the Court doubts the statute was intended to discount statements by a claimant's physician – particularly a treating physician – based on a mere technicality. *Robinson v. Shell Oil Co.*, 117 S. Ct. 843, 136 L. Ed. 2d 808, 846 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

The Commissioner's reliance on *McLeod* is also inapposite. *McLeod* merely stands for the principle that conclusions about a claimant's disability status or ability to work are "for the Social Security Administration to make, not a physician," and that a treating physician's opinion – while generally afforded the greatest weight in disability cases – "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." 640 F.3d at 884-85. Plaintiff is not arguing that Dr. Kutz's opinion about her disability status was binding on the ALJ. She merely contends that the ALJ failed to provide "specific and legitimate" reasons for according Dr. Kutz's opinion little weight. *See Lester*, 81 F.3d at 830; Doc. 12 at 15-16.

While a treating physician's opinion is generally given more weight than a non-treating physician's opinion, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings." *Thornsberry v. Astrue*, No. 10-CV-2459 JLS WVG, 2012 WL 628238, at *3 (S.D. Cal. Feb. 27, 2012), *aff'd sub nom. Thornsberry v. Colvin*, 552 F. App'x 691 (9th Cir. 2014). This is precisely what the ALJ concluded: that while the medical evidence "establishes some basis for the claimant's alleged pain and limitations . . . the extent of the claimant's alleged limitations is not fully supported [by the record or objective medical findings]." A.R. 19.

As discussed above, Dr. Kutz's April 2016 assessment of Plaintiff indicated that she had limited walking ability, could only sit, stand, or walk for about two hours during an eight-hour work day, needed frequent unscheduled breaks, had limited right hand and arm functionality, had difficulty moving her head, would rarely be able to lift or carry more than ten pounds, and would miss over four days of work per month. A.R. 305-09. The ALJ reasonably concluded that this assessment was belied by Dr. Kutz's "largely normal" examination notes, which revealed 5/5 strength in the upper and lower extremities, normal range of motion in the neck and lower back, negative straight leg tests, notes indicating that Plaintiff could walk without pain, intact to light touch sensation in both lower extremities, and full strength findings and normal gait. A.R. 22, 382-85, 422, 727, 732-33, 739.[6] In fact, a physical exam conducted by Dr. Kutz on April 6, 2016 – the same date as his medical opinion concluding that Plaintiff was unable to work – indicated largely normal examination results. A.R. 420-21.

Nor is it true, as Plaintiff alleges, that the ALJ "relie[d] on 3 pages of medical records" in evaluating Dr. Kutz's opinion and "completely fail[ed] to evaluate" Dr. Kutz's May 2018 medical statement and attached treatment notes. Doc. 12 at 16-17. The ALJ's

---

[6] The ALJ's decision, available at A.R. 14-23, cites to numerous portions of the record by exhibit number. For consistency, the Court refers to the same materials by reference to the administrative record.

specific discussion of Dr. Kutz's medical opinion may have been limited to a single paragraph, but much of the evidence relied upon by Dr. Kutz in forming his opinions was evaluated and discussed by the ALJ elsewhere in the report. *See* A.R. 19-21. For example, Dr. Kutz attached to his medical statement EMG reports from CORE Institute finding that Plaintiff suffered from right radiculopathy and carpal tunnel syndrome. A.R. 808. The ALJ acknowledged these impairments and accounted for them in her calculation of Plaintiff's residual functional capacity, yet noted that the referenced conditions appeared "mild" and did not justify the full extent of Plaintiff's alleged severity. A.R. 19, 302-03. Dr. Kutz attached physical therapy reports from Mayo Clinic, and the ALJ referenced these reports multiple times to show that Plaintiff's examinations were largely normal, her symptoms mild, and her treatments successful. *See* A.R. 19-21, 808, 810-13. Dr. Kutz attached treatment notes from a November 2016 emergency room visit to St. Joseph's hospital showing Plaintiff's disc protrusion and canal stenosis. The ALJ acknowledged these findings, but also noted that the objective medical record from the same visit – including x-rays and CT scans of Plaintiff's cervical spine – was otherwise largely normal and revealed no fractures, loosening, or instability. A.R. 19, 575, 808. Dr. Kutz attached treatment notes from Plaintiff's initial and follow-up visits to a neurosurgeon indicating that Plaintiff suffered from debilitating headaches. The ALJ pointed out that these notes, in addition to others, reveal that objective examinations of Plaintiff were largely normal and that Plaintiff was responding well to medication, Botox injections, and Daithe piercing of the bilateral ears. A.R. 20, 439, 494, 503, 508, 582, 796, 808, 810. Dr. Kutz notes that MRI reports from the Mayo clinic revealed a rotator cuff tear; the ALJ mentioned this condition multiple times in her report and accounted for it in Plaintiff's residual functional capacity, finding that it warranted "the addition of handling, fingering and feeling restrictions as well as reduced ability to stand and walk." A.R. 21, 808. Dr. Kutz opined that Plaintiff's pain medication limited and/or prevented her from working, yet his own treatment notes indicate that Plaintiff regularly denied any significant side effects from her medication. A.R 19, 382, 385, 423, 433, 511, 808.

"Incongruity between a treating physician's opinions and her own medical records is a 'specific and legitimate reason' for rejecting the opinions." *Dennis L. v. Commissioner Of Social Security*, No. C20-5170-MLP, 2020 WL 6343321, at *3 (W.D. Wash. Oct. 29, 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). As discussed above, the ALJ detailed this incongruity in several instances. A.R. 19-22. While the ALJ's reasons for discounting Dr. Kutz's opinion may have been scattered across her report, "all of the puzzle pieces were present, even if not neatly assembled before the Court." *De Botello v. Astrue*, 2011 WL 3292401, at *9 (D. Ariz. Aug. 1, 2011). "The Court reviews the ALJ's decision as a whole and will not reverse simply because the decision is explained with 'less than ideal clarity,' as long as the ALJ's reasoning may be discerned." *Dennis L. v. Commissioner of Social Security*, No. C20-5170-MLP, 2020 WL 6343321, at *3 (W.D. Wash. Oct. 29, 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099 (9th Cir. 2014)). The Court concludes that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Kutz's opinions.

### 3. Dr. Anne Koss-Leland.

The ALJ gave Dr. Koss-Leland's opinion little weight. Because Dr. Koss-Leland is an examining physician whose opinion was contradicted by other doctors, the ALJ could discount her opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record.[7] *Lester*, 81 F.3d at 830-31. Notably, an ALJ "needs less substantial evidence to reject an examining physician's opinion than to reject an [sic] treating physician's opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (citing *Lester*, 81 F.3d at 831 n.8).

Dr. Koss-Leland examined Plaintiff after her administrative hearing in June 2018 and concluded that Plaintiff could stand/walk only between 2-4 hours during an 8-hour day; sit for 6-8 hours during a typical 8-hour workday; never lift/carry more than 10 pounds; and never climb ladders/ropes/scaffolds, kneel, crouch, crawl, reach, handle,

---

[7] Neither party contests that the "specific and legitimate" standard applies here as well. *See* Docs. 12 at 15-19; 15 at 12.

finger, or feel. A.R. 825-26. This contradicted Dr. Kutz's assessment that Plaintiff was incapable of even a low stress job. *See* A.R. 815-20.

The ALJ gave partial weight to Dr. Koss-Leland's opinion, finding that her assessment of Plaintiff's limitations was "extreme" in light of the objective medical record and appeared to be "largely based on claimant's subjective reports[8] rather than the doctor's own examination findings." A.R. 21. Substantial evidence supports this conclusion. For example, Dr. Koss-Leland concluded that Plaintiff could "never reach, handle, finger or feel" on her left side, yet her own examination of Plaintiff revealed that, despite tingling in the left medial nerve distribution of her hand, Plaintiff was able to perform rapid alternating movements of the hand without difficulty and displayed both normal grip strength and 5/5 strength throughout the upper and lower extremities. A.R. 20, 823-24. Dr. Koss-Leland reported that Plaintiff was very "slow and gingerly" in her movements, yet upon examination was able to walk without assistance, and no other instances of slow movement were apparent from Plaintiff's medical records. A.R. 822-23. Further, when substantiating her conclusions about Plaintiff's limitations – for example, use of hands and feet, or ability to lift and carry – Dr. Koss-Leland cites primarily to Plaintiff's past failed neck and back surgeries, rather than to her own examination findings, indicating a reliance on Plaintiff's subjective reporting. *See, e.g.,* A.R. 815-17. Similarly, Dr. Koss-Leland's assessment that Plaintiff was limited to lifting and/or carrying less than 10 pounds was based largely on Plaintiff's statement that she could not "lift a gallon of milk without getting extreme pain in her back or neck." A.R. 825.

The Court notes that the ALJ's statement that "there are no findings [in Dr. Koss-Leland's opinion] to support restrictions to the lower extremities or the reduction to standing/walking" is not entirely accurate. A.R. 21. Dr. Koss-Leland's physical examination found that Plaintiff struggled with toe-and-heel and heel-to-shin walking. A.R. 823. But "in interpreting the evidence and developing the record, the ALJ does not

---

[8] Plaintiff does not challenge the ALJ's assessment of her subjective complaints. *See generally*, Doc. 12.

15

need to discuss every piece of evidence" and must consider only evidence that is significant and probative. *Howard ex rel. Wolff v. Barnhart,* 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ has met this burden in light of the "record as a whole," which reveals a lack of electromyography and nerve conduction studies supporting lower extremity restrictions, 5/5 strength throughout the lower extremities, and treatment records indicating that Plaintiff walked 2-3 times per week – and even daily – for exercise. *Thornsberry*, 2012 WL 628238, at *3; A.R. 20. The ALJ also appropriately found that Plaintiff's medical record did not support Dr. Koss-Leland's opinion. The ALJ further correctly noted that the doctor's opinion was based largely on Plaintiff's subjective complaints. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of physician opinions in part because they were based on claimant's subjective complaints, and noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings") (citation omitted). The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence, for discounting the opinions of Dr. Koss-Leland.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**, and the Clerk is directed to enter judgment and **terminate** this case.

Dated this 12th day of November, 2020.

David G. Campbell
Senior United States District Judge